UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF MAINE

Craig Brown

v.                                    Civil No. 11-cv-426-JD

State of Maine, et al.


                              O R D E R


     Craig Brown, who is proceeding pro se,[1] brought suit against

the United States, the State of Maine, the Town of Camden, state

and federal judges, the Maine Attorney General, district

attorneys, and his former attorney, alleging claims arising from

Brown's boundary dispute with his neighbor and his previous

unsuccessful litigation in state and federal courts.  The

defendants moved to dismiss under Federal Rule of Civil Procedure

12(b)(6).  The United States filed a motion to amend the motion

to dismiss and a motion to extend the time for the federal judges

to file answers.  Brown filed a letter to clarify his filings, a

motion to continue, and a separate "justification" of his motion

to continue.  The Town of Camden moved for sanctions against

Brown and moved to strike the letter filed by Brown.  Other

defendants also moved to strike the letter and the justification

filed by Brown.

_____

     [1]Although Brown describes himself as proceeding "in propria
persona," there is no difference in this case between the terms
"pro se" and "propria persona."  See Savage v. Estelle, 924 F.2d
1459, 1460 n.1 (9th Cir. 1991); El v. O'Brien, 2012 WL 2367096,
at *1 n.1 (E.D.N.Y. June 20, 2012).

## Background[2]

Brown's claims in this case began as a result of a dispute with his neighbor, Michael Ferrara, about the boundary between their two properties in the Stonehurst Subdivision located in Camden, Maine.[3]  After Brown tore down part of Ferrara's fence in early 2009, he was prosecuted and convicted in state court on a criminal mischief charge.  State v. Brown, ROCSC-CR-2009-00083. The prosecution was handled by Assistant District Attorney Lindsay Jones.  Geoffrey Rushlau was District Attorney.  Judge Jeffrey L. Hjelm presided at the trial.  Brown was found guilty in March of 2010.

Ferrara sought a protective order against Brown, which was granted by Judge Westcott in Rockland (Maine) District Court, on April 17, 2009, based on the parties' signed agreement.  Brown was ordered to allow the fence to be constructed on Ferrara's property.

Ferrara brought suit against Brown in May of 2009 in Maine Superior Court, seeking to establish the boundary between them

---

[2]The background facts are taken from Brown's amended complaint, decisions in the other related federal cases, and exhibits Brown submitted with his objection to the Maine defendants' motion to dismiss.

[3]Brown had had an acrimonious relationship with Ferrara before the fence incident.  He filed actions in state court against Ferrara.  Three court orders, dated October 11, 14, and 17, 2008, respectively, were issued in these three separate cases.  Brown was warned that if he filed another frivolous suit against Ferrara, the court would not allow further filings absent court approval.

and to recover the cost of the damage Brown caused to his fence.
Ferrara v. Brown, ROCSC-RE-2009-00010. Brown brought a
counterclaim to establish the boundary in the place he asserted
it should be. Attorney Steven Petersen represented Brown. Brown
argued, and has continued to argue in subsequent cases, that the
boundary between his property and Ferrara's property is shown on
a subdivision plan for the Stonehurst Subdivision.

Judge Hjelm also presided in the boundary case. The court
ruled on November 8, 2010, based on summary judgment entered on
November 18, 2009:

    that the parties' common boundary line is marked and
    defined by the existing monuments and surveying pins
    that were placed in the ground as part of the original
    subdivision development; that these monuments and pins
    are clearly visible; that the parties' common boundary
    line is as shown in the survey prepared by Nathaniel
    Beal; that the fence erected by the Ferrara [sic] is
    located on the plaintiff's [Ferrara's] property; that
    the defendant [Brown] damaged, destroyed or threw down
    the fence; and that the cost to repair the fence was
    $4,038.19.

The court denied Ferrara's request for punitive damages.
Judgment entered on March 9, 2010.

Brown filed complaints with the Maine Board of Licensure for
Professional Land Surveyors against Nathaniel Beal, a surveyor
who provided a survey of the property boundary between Ferrara
and Brown, and the survey companies that did surveys for the
Stonehurst Subdivision. Elwood Ellis was a complaint officer
with the Board of Licensure.

3

Brown filed four related cases in federal court:  <u>Brown v.</u>
<u>Camden</u>, 10-cv-063-GZS (D. Me. judgment entered May 10, 2010)
(<u>Camden</u>); <u>Brown v. Ferrara</u>, 10-cv-523-GZS (D. Me. judgment
entered June 15, 2012) (<u>Ferrara</u>); and <u>Brown v. Wodruff</u>, 12-cv-
168-GZS (D. Me. dismissed May 31, 2012) (<u>Wodruff</u>).  Judgments
have been entered against Brown in the three cases.  Brown filed
this case on November 10, 2011.

## A.  <u>United States's Motions to Amend and to Extend Time</u>

By filing the motion to dismiss on behalf of the United
States and the two federal judges, Assistant United States
Attorney ("AUSA") Roth appeared on behalf of all three federal
defendants.  <u>See</u> Local Rule 83.2(a).[4]  Once an attorney appears
on behalf of a party, the attorney must file a motion to
withdraw, seeking leave of court to end the representation.
Local Rule 83.2(c).  AUSA Roth did not move to withdraw but
instead filed a motion to amend the motion to dismiss, asking the
court to grant amicus curiae status to the United States and to
deem the motion to dismiss as having been filed by the United
States on its own behalf and in support of the federal judges.
An amicus curiae is not a party, does not represent another
party, and cannot raise issues that have not been asserted by a
party.  <u>See</u> <u>Upper Blackstone Water Pollution Abatement Dist. v.</u>

_____

[4]Local Rules of the United States District Court for the
District of Maine.

4

U.S.E.P.A., 690 F.3d 9, 29 n.25 (1st Cir. 2012); United States v.
Mullet, --- F. Supp. 2d ---, 2012 WL 2330905, at *5 (N.D. Ohio
May 31, 2012).    The reasons for this procedural anomaly,
presented by the motion to amend, are not apparent to the court.
The motion to amend is denied.  Therefore, the motion to extend
time is unnecessary.

## B.  Plaintiff's Motion for Continuance and to Amend Response

Brown filed a motion for a continuance and for leave to
amend his response to the motion to dismiss filed by the United
States and federal judges.  The defendants objected to the
motion.  In response, Brown filed "Plaintiff Justification for
Motion for Continuance and to Extend Time to File Response to
[Federal Defendants'] Motion to Dismiss."  The defendants filed
objections to that filing.

In support of his motion, Brown states that he has been
abused by police and by federal court staff and asks for time to
document the abuse.  He also states that he "is seeking
additional legal help from the Senate and House of Representative
Judicial Councils, so that the correct actions are taken to purge
the Portland Federal District Court and the Maine 'legal' system
of criminals."  He further represents that he needs more time to
document violations of his rights by the defendants.  In his
justification for the motion, Brown asks the court to review his
list of accusations of wrongdoing.

5

Brown has not provided any cognizable basis for a continuance or for leave to amend his response to the federal defendants' motion to dismiss. After he filed the motion for a continuance and to amend his response, Brown filed responses to other motions filed by the defendants, moved for my recusal, and objected to the order denying his motion for recusal. Neither Brown's motion nor the record in this case supports his requests for a continuance and for leave to amend his response.

## C. Letter to Clarify and Motions to Strike

In the filing titled "Plaintiff Letter to Clarify Filings and Response to Defendants Motions," Brown states that he would like to explain his efforts to vacate the judgment in a different case, Ferrara, 10-cv-523-GZS, and the relationship between that case and the present case. The letter continues with pages of accusations of misfeasance by judges, police, court staff, and others, along with argument to support Brown's claims and accusations. The Town of Camden, the Maine defendants, and Steven Petersen move to strike the letter on the grounds that it is not a proper filing and that it contains new allegations not otherwise part of this case.[5] The defendants also ask that Brown be sanctioned under Federal Rule of Civil Procedure 11 for making frivolous filings.

---

[5]The state defendants appear to have filed their motion to strike twice: document number 55 and document number 64.

The defendants are correct that the Federal Rules of Civil
Procedure require a party to file a motion to request action by
the court.  Fed. R. Civ. P. 7(b).  Brown's letter does not meet
the requirements of a motion.  In addition, to the extent Brown
intended his letter to augment his responses to the motions to
dismiss, that also is not a proper filing, as Brown should
realize based on his litigation experience in the four cases he
has brought in this court.  Therefore, the letter will not be
considered in this case.

The defendants' request for sanctions is considered below.

## D.  Motions to Dismiss

All of the defendants move to dismiss the claims against
them under Federal Rule of Civil Procedure 12(b)(6).  Brown's
claims are alleged in fifteen counts.  Counts 1 and 2 are
identified as claims of violations of 42 U.S.C. § 1983 and § 1985
and fraud against the court, brought against the State of Maine
and Judge Westcott.  Counts 3, 4, and 5 are identified as claims
of violations of 42 U.S.C § 1983 and § 1985, fraud against the
court, and RICO predicate acts, brought against the State of
Maine, Geoff Rushlau, and Lindsay Jones.[6]  Counts 7 and 8 are
identified as claims of violations of 42 U.S.C. § 1983 and § 1985
and professional misconduct by a lawyer, brought against the

---

[6]RICO is the Racketeer Influenced and Corrupt Organization
Act.

State of Maine, Judge Jeffery Hjelm, and Attorney Steven
Petersen.[7]  Counts 10 and 11 are identified as claims of
violations of 42 U.S.C. § 1983 and § 1985 and obstruction of
justice and retaliation, brought against the State of Maine, the
Maine Attorney General, and Complaint Officer Elwood Ellis.
Counts 12 and 13 are identified as claims of violations of 42
U.S.C. § 1983 and § 1985 and fraud against the court, brought
against the United States and Magistrate Judge Margaret Kravchuk.
Count 14 is identified as a claim of violations of 42 U.S.C. §
1983 and § 1985, brought against the United States and Judge
Sandra Lynch.  Count 15 is identified as a claim of violations of
42 U.S.C. § 1983 and § 1985, brought against the State of Maine
and the Town of Camden.

To avoid dismissal under Rule 12(b)(6), the plaintiff must
allege "a plausible entitlement to relief," meaning "a claim to
relief that is plausible on its face." Bell Atl. Corp. v.
Twombly, 550 U.S. 544, 570 (2007).  The Rule 12(b)(6)standard
"demands more than an unadorned, the-defendant-unlawfully-harmed-
me accusation.  A pleading that offers labels and conclusions or
a formulaic recitation of the elements of a cause of action will
not do." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  Instead,
the complaint must provide sufficient factual matter, that when
accepted as true, supports a plausible claim. Id.

_____

[7]Although the prayer for relief for Counts 7 and 8 mentions
Count 9, Count 9 is omitted from the title.

8

Brown brings claims against many of the defendants under 42 U.S.C. § 1983 and § 1985. Neither § 1983 nor § 1985 creates substantive rights. D.B. ex rel. Elizabeth B. v. Esposito, 675 F.3d 26, 44 (1st Cir. 2012). Section 1985, as might be applicable here, provides a private right of action against two or more persons who conspire to interfere with specific federal civil rights. See Soto-Padro v. Pub. Bldgs. Auth., 675 F.3d 1, 4 (1st Cir. 2012); Connor v. Mass. Comm'n Against Discrimination, 2012 WL 3686182, at *2 (D. Mass. Aug. 15, 2012).

Although Brown identified § 1985 as a cause of action, he did not allege facts to support the elements of a claim under § 1985 against any of the defendants. Therefore, all claims under § 1985 are dismissed.

### 1. Federal Defendants' Motion to Dismiss

The United States, Magistrate Judge Kravchuk, and Judge Lynch move to dismiss the claims against them. The United States asserts sovereign immunity, and the judges assert absolute judicial immunity. The federal defendants also contend that Brown has not alleged cognizable causes of action against them. In response, Brown argues that Judge Kravchuk ignored Maine law which resulted in fraud on the court; that various police officers, judges and court personnel, and others have stalked, harassed, and bullied Brown and his wife, and that Judge Lynch and others have made the judicial complaint process void.

9

### a. United States

"Absent a waiver, sovereign immunity (which is juris-
dictional in nature) shields the United States from suit."
Villanueva v. United States, 662 F.3d 124, 126 (1st Cir. 2011).
The United States has not waived its sovereign immunity for
purposes of civil rights claims under § 1983 or RICO.  See
Jachetta v. United States, 653 F.3d 898, 907-08 (9th Cir. 2011);
Wilson v. U.S. Dept. of Educ., 2012 WL 1443274, at *9 (D. Or.
Apr. 24, 2012); Wallace v. Miller, 2012 WL 1106759, at *9 (M.D.
Pa. Mar. 6, 2012); Papadopoulos v. Astrue, 2011 WL 5244942, at
*10 (S.D.N.Y. Nov. 2, 2011).  State law tort claims against the
United States must be brought pursuant to the limited waiver
provided under the Federal Tort Claims Act.  Davis v. United
States, 670 F.3d 48, 52 (1st Cir. 2012).

Brown's federal claims against the United States are barred
by sovereign immunity.  Brown has not alleged a claim or complied
with the requirements of the Federal Tort Claims.  Therefore, all
of Brown's claims against the United States are dismissed.

### b. Judges

Brown's claims against Magistrate Judge Kravchuk are based
on her decisions that were not in his favor in his prior cases.
He contends that Magistrate Judge Kravchuk was biased against
him, failed to follow Maine law, and did not follow the Federal
Rules of Civil Procedure.  Brown argues that Magistrate Judge

10

Kravchuk violated his unspecified "rights, privileges or
immunities secured by the Constitution or by Federal Law."
Brown's claims against Judge Lynch arise from his complaint about
Magistrate Judge Kravchuk to the First Circuit Court of Appeals.
He alleges that Judge Lynch denied his unspecified "rights,
privileges or immunities secured by the Constitution or by
Federal Law."

Absolute judicial immunity protects judges from liability
for actions taken in their judicial capacity that are within the
jurisdiction of the court. Mireles v. Waco, 502 U.S. 9, 11
(1991); Forrester v. White, 484 U.S. 219, 225-26 (1988).
Judicial immunity applies to claims brought under § 1983.[8] Stump
v. Sparkman, 435 U.S. 349, 356 (1978). Decisions made in the
course of a court case are judicial actions protected by
immunity. Id. at 362. Immunity protects judges even when they
are accused of acting maliciously or corruptly. Mireles, 502
U.S. at 11.

Brown attacks Magistrate Judge Kravchuk's decisions, which
were made in her judicial capacity. He provides no basis to
conclude that Magistrate Judge Kravchuk lacked jurisdiction to

---

[8]Further, federal officials are not subject to suit under
§ 1983 which applies to state actors acting under state law.

11

make the decisions.   Therefore, Brown's claims are barred by
absolute judicial immunity.[9]

Judge Lynch is chief judge of the Court of Appeals of the
First Circuit.  Brown's claims against Judge Lynch are based on
his dissatisfaction with the result of his judicial conduct
complaint against Magistrate Judge Kravchuk.  He contends that
Judge Lynch failed to supervise Magistrate Judge Kravchuk and
improperly failed to immediately disqualify Magistrate Judge
Kravchuk from Brown's cases.

A claim that a chief judge failed to properly supervise
another judge is barred by absolute judicial immunity.  Foley v.
Marquez, 2004 WL 603566, at *3 (N.D. Cal. Mar. 22, 2004).   The
chief judge of a circuit court of appeals is authorized by
statute to review complaints of judicial misconduct, see 28
U.S.C. §§ 351 and 352, and the judicial council is authorized to
make decisions on such complaints, 28 U.S.C. § 354.  Actions by a
judge in reviewing and deciding issues pertaining to judicial
conduct complaints and participation in the Judicial Council are
taken in her capacity as a judge and are within the judicial
function protected by absolute judicial immunity.  Overton v.
Torruella, 183 F. Supp. 2d 295, 300 (D. Mass. 2001).  Therefore,

---

[9]To the extent Brown intended to allege a state law cause of
action, which is far from clear, that claim too is barred by
absolute judicial immunity.  See Richards v. Ellis, 233 A.2d 37,
38 (Me. 1967).

Brown's claims against Judge Lynch are barred by absolute
judicial immunity.

## 2.   The Maine Defendants' Motion to Dismiss

The Maine defendants are the State of Maine, the Maine
Attorney General, Geoff Rushlau, Lindsay Jones, Elwood Ellis,
Judge Hjelm, and Judge Westcott.  The Maine defendants move to
dismiss the claims against them on the grounds of judicial
immunity, failure to state a claim, res judicata, prosecutorial
immunity, and Eleventh Amendment immunity.  To the extent any
state law claims would survive, the Maine defendants ask the
court not to exercise supplemental jurisdiction over them under
28 U.S.C. § 1367.

In response, Brown argues that sovereign immunity does not
apply because he sued the state actors in their official and
individual capacities.  He contends that judicial immunity does
not apply because the state judges lacked jurisdiction to decide
matters entrusted to local planning boards and that Judge Hjelm
ignored exculpatory evidence in his favor.  He also contends that
res judicata does not apply to the decisions against him on his
claims against the prosecutors.

### a.   State of Maine, Maine Attorney General, and Elwood Ellis

The Maine Attorney General and Elwood Ellis in their
official capacities are the equivalent of the State of Maine.

13

Sovereign immunity under the Eleventh Amendment precludes any federal suit against a state, absent its consent or valid federal legislation abrogating immunity, except under the exception for prospective injunctive and declaratory relief. Consejo de Salud de la Comunidad de la Playa de Ponce, Inc. v. Gonzalez-Feliciano, --- F.3d ---, 2012 WL 3553610, at *17 (1st Cir. Aug. 20, 2012). The State of Maine has not consented to suit by Brown in this case, and Brown's claims are not based on a valid statutory abrogation of sovereign immunity. See id. at *18. Therefore sovereign immunity bars all of Brown's claims against the State of Maine and the state defendants in their official capacities.

Brown states in his objection that he also brought his claims against the Maine Attorney General in his individual capacity. Sovereign immunity does not bar suits against state officials in their individual capacities as long as the relief sought would come from the officer personally. Guillemard-Ginorio v. Contreras-Gomez, 585 F.3d 508, 530-31 (1st Cir. 2009). Brown's allegations against the Maine Attorney General pertain to his failure to supervise judges, prosecutors, and Ellis.

As is noted above, Brown does not allege a claim against the Attorney General that meets the elements of § 1985. Section 1983 does not recognize claims under a theory of respondeat superior. See Marrero-Rodriguez v. Municipality of San Juan, 677 F.3d 497, 503 (1st Cir. 2012). Instead, "liability for public officials under section 1983 arises only if a plaintiff can establish that

14

his or her constitutional injury resulted from the directs acts or omissions of the official, or from indirect conduct that amounts to condonation or tacit authorization." Grajales v. P.R. Ports Auth., 682 F.3d 40, 47 (1st Cir. 2012) (internal quotation marks omitted).

Brown's allegations are insufficient to state a claim of supervisor liability under § 1983. He offers only conclusory allegations that the Attorney General had a duty to supervise and failed to do so. Brown states that the Attorney General and the Maine Board of Professional Licensing had a duty to investigate Brown's complaints and that their failure to do so violated Brown's "Civil Rights" but does not identify the source of the duty or the rights violated. Brown also alleges that the Attorney General was required by state law to take action against the surveyor who provided a survey in the criminal action against Brown, but that theory is based on state rather than federal law.

Brown fails to allege any facts to support a claim against Elwood Ellis. Brown speculates that if Ellis had investigated his complaints against certain surveyors, Brown would not have been convicted in the criminal action. Such implausible speculation does not state a claim under § 1983 or state law.

### b. Prosecutors

Brown alleges that District Attorney Geoff Rushlau and Assistant District Attorney Lindsay Jones prosecuted the criminal

15

mischief charges against Brown.  They move to dismiss the claims against them on the grounds of res judicata and absolute prosecutorial immunity.  Brown asks the court to vacate the judgments against Brown in <u>Camden</u>, 10-cv-063-GZS, and <u>Ferrara</u>, 12-cv-523-GZS.  Brown also argues that the state court judgments do not have preclusive effect because of fraud by the Camden and Rockport police, surveyors, and lawyers and that the prosecutors withheld exculpatory evidence in the criminal prosecution against him.

To the extent Brown bases his objection to the prosecutors' motion to dismiss on his request to vacate the judgments in <u>Camden</u> and <u>Ferrara</u>, his objection is frivolous.  The judgments entered in those cases cannot be reconsidered in this case.

The doctrine of res judicata or claim preclusion protects a party in a legal action against being required to relitigate the same issue with the same party, or his privy, and promotes judicial economy.  <u>FleetBoston Fin. Corp. v. Alt</u>, 638 F.3d 70, 79 (1st Cir. 2011).  A party asserting a defense based on the res judicata effect of a federal court decision must establish: "(1) a final judgment on the merits in an earlier suit, (2) sufficient identicality between the causes of action asserted in the earlier and later suits, and (3) sufficient identicality between the parties in the two suits."  <u>Id.</u> (internal quotation marks omitted).  "The doctrine of res judicata dictates that a final judgment on the merits of an action precludes the parties from

relitigating claims that were or could have been raised in the prior action." Haag v. Shulman, 683 F.3d 26, 30 (1st Cir. 2012).

In this case, the prosecutors assert that Brown did or could have raised the present claims in the Camden case brought in this court against both prosecutors. In Camden, Brown brought claims arising from his arrest and prosecution for taking down part of Ferrara's fence. He cited a list of civil rights statutes including § 1983 as the legal grounds for his claims. In support, he alleged that Rushlau failed to supervise Jones, that Rushlau and Jones prosecuted Brown on a charge of criminal mischief without evidence, that Rushlau and Jones erred in taking the word of various witnesses which prevented Brown from confronting witnesses, and that Rushlau and Jones failed to provide exculpatory evidence. He claimed that those actions violated his Fifth and Sixth Amendment rights and caused other harm.

The court concluded that Rushlau and Jones were entitled to absolute prosecutorial immunity from liability for all of Brown's federal claims and declined to exercise supplemental jurisdiction as to any state law claims alleged. The defendants' motions to dismiss were granted, and judgment was entered against Brown.

The claims Brown alleges here either were or could have been raised in Camden. A final judgment was entered against Brown in Camden. 10-cv-063-GZS (D. Me. May 10, 2010). Brown did not appeal that judgment. Therefore, Brown's claims against Rushlau

17

and Jones in this case are barred by the doctrine of res judicata.

        c.  Judges

    In Counts 1 and 2, Brown alleges that "[t]he award of a Collateral Estoppels decision to Ferrara by Judge Westcott was a premeditated attempt to defraud [Brown] of his property rights, and violate [Brown's] Civil Rights, by using an Order for Protection hearing to make an illegal change to the lot lines in a Maine Subdivision without going through the Planning Board Process" as required by Maine statutes and Camden subdivision ordinances.  In Counts 4 and 5, Brown alleges that Judge Hjelm would not provide the discovery Brown sought.  In Counts 7 and 8, Brown alleges that Judge Hjelm denied him due process at a pretrial hearing when he rejected certain evidence Brown sought to introduce and taunted Brown by repeating "Maine Rules of Evidence," refused to recuse himself, did not respond to Brown's motions asking the court to provide copies of documents supporting the indictment against Brown, and violated due process by ignoring 30-A  M.R.S.A. §§ 4406 and 4407, made false statements in his decision, knew that Ferrara's asserted lot line was illegal, and intimidated Brown's attorney.

    As is discussed above, judges are entitled to immunity from suit for all actions taken in their judicial capacity unless they act in the clear absence of jurisdiction.  Mireles, 502 U.S. at

18

11-12; <u>Stump</u>, 435 U.S. at 357. Absolute judicial immunity protects state judges from suit under § 1983. <u>See</u> <u>Stump</u>, 435 U.S. at 356. Maine holds that judges are entitled to absolute immunity from suits for damages arising from their judicial acts. <u>Richards</u>, 233 A.2d at 38.

All of the actions Brown alleges were taken by the judges in their judicial capacities. Brown provides no basis to conclude that the judges were acting without jurisdiction. Therefore, Judge Hjelm and Judge Westcott are entitled to absolute judicial immunity, and all claims against them are dismissed.

### 3.  Camden's Motion to Dismiss

Camden challenges Brown's allegations on the ground that the same allegations were deemed insufficient to support his claims in prior litigation. With respect to the present claim, Camden contends that the allegations fail to state a cognizable claim for municipal liability. In response, Brown reviews his previous litigation, argues that prior court decisions should be vacated, and contends that his new claim against Camden based on its zoning policy states a claim.[10]

Brown alleges his claim against Camden in Count 15, as a violation of § 1983 and § 1985. As is noted above, Brown provides no plausible basis for his § 1985 claim. Section 1983

---

[10]To the extent Brown argues theories based on police action and other matters, those are not pleaded in Count 15, which is his only claim against Camden in this case.

provides a private right of action "against a person who, under color of state law, deprives another of rights secured by the Constitution or by federal law." Mead v. Independence Ass'n, 684 F.3d 226, 231 (1st Cir. 2012) (internal quotation marks omitted). Municipal liability under § 1983 attaches only when the deprivation of a federally secured right occurred through an official policy or custom. Rodriguez v. Municipality of San Juan, 659 F.3d 168, 181 (1st Cir. 2011).

In Count 15, Brown alleges in a general and conclusory fashion that the State of Maine "knowingly, recklessly, or with gross negligence failed to instruct, supervise, control and discipline on a continuing basis the Town of Camden in their duties to refrain from denying the Plaintiff and his rights, privileges or immunities secured by the Constitution or by Federal Law." Am. Compl. ¶ 167. Brown further alleges that Maine and Camden were required by statute "to ensure that the Stonehurst Subdivision complied to all State, Local and Federal Law per the Maine Development Act and the Town Ordinances, but failed to do so." Am. Compl. ¶ 168. The only specific allegations pertaining to Camden are that the Camden Zoning Office allowed houses to be built in an area protected by a Maine Department of Environmental Protection Plan and allowed the Ferraras to build a house that was too big for the lot. Brown also states that two other houses were improperly located in the subdivision. By way of relief, he asks for an order that, among

20

other things, directs Camden to "dismantle and move the houses." The claims against the State of Maine have been dismissed.

Brown has not alleged a deprivation of a federally secured right or any facts to make out a plausible claim that Camden deprived him of a federally secured right. Therefore, Brown's allegations against Camden do not state a claim under either § 1983 or § 1985 and are dismissed under Rule 12(b)(6).

### 4. Steven Petersen's Motion to Dismiss

Brown alleges that Steven Petersen represented him in the state court civil case brought against Brown by Ferrara. The only claim or claims against Petersen appear in Counts 7 and 8, which are identified as violations of § 1983 and § 1985 and as "Professional Misconduct by a Lawyer." The focus of Counts 7 and 8 is Judge Hjelm, and the claims against Judge Hjelm have been dismissed. With respect to Petersen, Brown alleges only:

All that the Plaintiff's Attorney, Steven Petersen would have had to do to get the case dismissed, was to submit a Motion to Dismiss with a copy of Title 30-A, M.R.S.A. 4407; which prohibits making changes to the lot lines in a Maine Subdivision without going through the Planning Board Process. The Plaintiff contends that Petersen's failure to file Motions to get the case dismissed constitute Professional Misconduct by Petersen.

Am.Compl. ¶ 127.

Because Brown has not alleged that Petersen was a state actor, he has not alleged a § 1983 claim against Petersen. See The Real Estate Bar Ass'n for Mass., Inc. v. Nat'l Real Estate

Information Servs., 608 F.3d 110, 121 (1st Cir. 2010). As stated
above, Brown provided no basis to support a § 1985 claim against
Petersen or any of the defendants. Therefore, to the extent
Brown intended to bring a civil rights claim against Petersen
under either § 1983 or § 1985, those claims are dismissed.

Brown may have intended to bring a legal malpractice claim
against Petersen, based on his title of "Professional Misconduct
by a Lawyer." Petersen contends that Brown did not allege
sufficient facts to support that claim and, alternatively, that
the court should decline supplemental jurisdiction over the state
law claim.

Under Maine law, a legal malpractice claim consists of the
following elements: (1) that the defendant breached a duty owed
to his client to conform to the applicable standard of conduct;
and (2) that the breach harmed the plaintiff. Garland v. Roy,
976 A.2d 940, 946 (2009). Harm for purposes of legal malpractice
is that the plaintiff would have achieved a more favorable result
but for the defendant's breach of the standard of care. Id.

Petersen contends that Brown's conclusory allegations do not
allege the elements of a legal malpractice claim. Specifically,
Peterson argues that Brown's allegation that Ferrara's case would
have been dismissed if Petersen had moved to dismiss based on 30-
A M.R.S.A. § 4407 is contrary to the circumstances of the case.
Judge Hjelm ruled in Ferrara's favor based on the existing
boundary markers "that were placed in the ground as part of the

original subdivision development . . . ." Ferrara v. Brown, RE-09-10 (Maine Superior Court Nov. 8, 2010). Because the decision against Brown was based on the original subdivision markers, M.R.S.A. § 4407, which pertains to revisions to a subdivision plan, was inapplicable. Therefore, Brown has not provided plausible allegations that his theory based on § 4407 would have provided a more favorable result.

Because Brown's legal malpractice claim is dismissed on the merits, the court need not consider the application of supplemental jurisdiction under 28 U.S.C. § 1367(c).

## E. Motions for Sanctions

The Town of Camden moves for sanctions against Brown on the grounds that his allegations against Camden repeat claims that were dismissed from other cases Brown filed and that to the extent Brown makes new claims, they are frivolous. Camden seeks an award of attorneys' fees against Brown as a sanction for filing frivolous claims in this case against Camden. Camden, the Maine defendants, and Steven Petersen move for sanctions against Brown to bar him from making any additional filings in this court without prior court approval.

The Federal Rules of Civil Procedure apply to all litigants and "impose an obligation, both on counsel and on individuals acting as their own counsel, to comply with court rules and not file frivolous motions." United States v. Gomez-Rosario, 418

F.3d 90, 101 (1st Cir. 2005). By signing a filing, a party
proceeding pro se certifies to the court "that to the best of
[his] knowledge, information and belief, formed after an inquiry
reasonable under the circumstances:" (1) the filing is not being
made for an improper purpose, (2) the contentions in the filing
are warranted, (3) the factual allegations are supported by
evidence, and (4) denials of factual contentions are warranted.
Fed. R. Civ. P. 11(b). Violation of Rule 11(b) may result in
imposition of sanctions that are sufficient to deter repetition
of the conduct that violated Rule 11(b) or similar conduct. Fed.
R. Civ. P. 11(c). A party required to defend a frivolous lawsuit
may be awarded the attorneys' fees incurred in the litigation.
Fed. R. Civ. P.11(c); McCarty v. Verizon New England, Inc., 674
F.3d 119, 123 (1st Cir. 2012).


    1. Camden's Motion for an Award of Attorneys' Fees

Camden seeks sanctions under Rule 11. In response, Brown
argues that Camden and the judges in prior cases "disregarded the
Federal Rules of Civil Procedure" and "refused to cooperate with
the Rules of Discovery." Brown also asserts that the court in
Ferrara, 10-cv-523-GZS, would not hear his theory that his state
criminal conviction was obtained by fraud and that federal judges
and court staff conspired against his rights. He further asserts
that he has brought a new claim against Camden in this case
alleging that he was harassed by the Camden police, which

affected his ability to prosecute his claims in <u>Ferrara</u>, and that Camden's policies and Camden police violated Brown's equal protection rights in this case.

Brown previously brought suit against Camden, and others, in <u>Camden</u>, 10-cv-63. The claims against Camden, brought under § 1983, were based on actions by Camden police and were dismissed because Brown failed to allege any basis for municipal liability. Judgment was entered in <u>Camden</u> on May 10, 2010.

Undeterred, Brown filed a second suit in federal court on December 20, 2010, which included claims against his neighbor, Michael Ferrara, the Town of Camden, and others. In <u>Ferrara</u>, 10-cv-523-GZS, Brown brought federal claims in which he alleged Camden's responsibility for the actions of others related to the Stonehurst subdivision and the actions of the Camden police. The court dismissed Brown's claims against Camden on June 7, 2011, based on the preclusive effect of the dismissal of his claims in <u>Camden</u>.

After the claims against Camden were dismissed in <u>Ferrara</u>, Brown incurred warnings from the court in response to his frivolous filings. The court warned Brown repeatedly that he would face sanctions for further frivolous filings.[11] Despite the repeated warnings in <u>Ferrara</u>, Brown continued to make frivolous filings. The court, nevertheless, declined to impose

---

[11]<u>See</u> <u>Ferrara</u>, docket nos. 134, 203, 261, and 356)

25

sanctions on Brown in that case.  Judgment was entered against
Brown in Ferrara on June 15, 2012.

Brown filed this action, on November 10, 2011, again naming
the Town of Camden as a defendant, along with a long list of
other defendants.  As is discussed above, Camden's motion to
dismiss is granted, based on res judicata.  Camden is correct
that Brown's claims in this case against Camden are frivolous.

Brown filed a fourth suit in federal court on May 20, 2012,
again naming the Town of Camden as a defendant, along with thirty
other defendants.  Brown v. Wodruff, 12-cv-168-GZS.  In Wodruff,
the court found that "Plaintiff's Complaint is frivolous and
reflects a pattern of being an abusive litigant - a problem for
which [Brown] has received previous warnings," noting the three
warnings in Ferrara.  The court dismissed the complaint as
frivolous, and judgment was entered on May 31, 2012.

Brown's accusations and theories have been refuted in the
course of his years of litigation on these issues in state and
federal courts.  At this point, Brown no longer can hold a good
faith belief that a filing which makes the same accusations is in
compliance with Rule 11(b).  Brown has been warned repeatedly
that his frivolous filings will result in sanctions being imposed
against him, but he has ignored the warnings.  In view of this
lengthy history of frivolous filings, the time has arrived to
impose sanctions.

Camden's motion for an award of attorneys' fees incurred in filing the motion to dismiss and the reply is granted.

## 2. <u>Motion to Require Prior Leave for Additional Filings</u>

Camden, the Maine defendants, and Steven Petersen ask the court to restrict Brown from making any further filings in this court, including filing new actions, without prior leave of court. In support, the defendants cite Brown's history of frivolous and abusive litigation and the prior warnings he has received.

"Federal courts 'possess discretionary powers to regulate the conduct of abusive litigants.'" <u>United States v. Gomez-Rosario</u>, 418 F.3d 90, 101 (1st Cir. 2005) (quoting <u>Cok v. Family Court of R.I.</u>, 985 F.2d 32, 34 (1st Cir. 1993)). "This power includes the ability to enjoin a party – even a pro se party – from filing frivolous and vexatious motions." <u>Gomez-Rosario</u>, 418 F.3d at 101. Before an injunction issues, however, the party to be enjoined must be warned that sanctions are being considered. <u>Cok</u>, 985 F.2d at35.

As has been noted above, Brown has filed four actions in this court pertaining to the same underlying matters: his boundary dispute with his neighbor that led to state criminal proceedings against Brown and to a state court decision that located the boundary in accord with the neighbor's position. Brown has made conclusory and frivolous accusations against a

27

host of defendants who have been involved in some aspect of his boundary dispute, court cases, and interactions with police. The court has warned Brown repeatedly that his claims and filings are frivolous and that sanctions will be imposed for further frivolous filings. Nevertheless, Brown has continued to pursue his meritless allegations.

One of our great rights and privileges as American citizens is the right of access to our courts. However, with rights come responsibilities to exercise those rights in a reasonable manner. When an individual uses the courts to promote his or her vexatious intentions, for whatever reasons, by repeatedly bringing meritless claims, then that individual has abused the right of access to the courts. Neither the judicial system nor the parties who must respond can reasonably be expected to expend their time and resources on such meritless actions. Unfortunately, when a point is reached where vexatious litigants by their own actions have seriously compromised their right of access to the courts, the courts, in the exercise of discretion, can place reasonable restrictions on that right.

Therefore, to prevent Brown from continuing to abuse the judicial process, from wasting judicial resources, and from wasting the resources of parties who must respond to his frivolous lawsuits, he will be enjoined from making new filings in this court without prior permission of this court, except for a filing, if any, challenging this order and a filing, if any, in response to Camden's anticipated motion for attorneys' fees.

28

## Summary of Rulings on Pending Motions

For the foregoing reasons, the motions are resolved as follows.

The federal defendants' motion to amend (document no. 44) and motion for extension of time (document no. 45) are denied.

The plaintiff's motion for a continuance (document no. 50) and justification (document 57) are denied.

The defendants' motions to strike (documents no. 48, 54, 55, and 64) are granted. "Plaintiff Letter to Clarify Filings and Response to Defendants Motions" (document no. 46) is struck from the record.

The federal defendants' motion to dismiss (document no. 39) is granted. All claims against the federal defendants are dismissed with prejudice.

The Maine defendants' motion to dismiss (document no. 32) is granted. All claims against the Maine defendants are dismissed with prejudice.

The Town of Camden's motion to dismiss (document no. 28) is granted. All claims against the Town of Camden are dismissed with prejudice.

Steven Petersen's motion to dismiss (document no. 33) is granted. All claims against Steven Petersen are dismissed with prejudice.

The Town of Camden's motion for sanctions (document no. 47) is granted. Camden shall file a motion for an award of

reasonable attorneys' fees incurred in defending the claims against Camden in this case **on or before November 21, 2012.** Brown shall have **fourteen days from the date the motion is filed to respond.**

## Injunction

Now, therefore, based on the findings, rulings, and history of litigation that have been set forth in this order, the court issues the following permanent injunction against Craig Brown.

Craig Brown is hereby permanently enjoined, restrained, and otherwise prohibited from making any further filings or initiating any further actions in the United States District Court for the District of Maine without the prior permission of this court, except for filings, if any, challenging this order and a response, if any, to Camden's motion for reasonable attorneys' fees.

If Brown seeks to make any other filings in this court, including initiating any new suits or actions, he must first file a motion, not to exceed three pages, for permission to make that filing. As part of a motion for permission to file, Brown must:

(1) succinctly explain the type of filing he intends to make,

(2) clearly state the claims he seeks to raise,

(3) attach an affidavit in which he certifies, under penalty of perjury, that his claims made are new and have not been raised previously in this court or any other court, and

(4) attach the proposed filing to the motion.

A judge of this court will review the motion and the proposed filing and will determine in a written order whether to grant or deny permission for the filing. In the same order, the court will direct the clerk of court either to docket the filing or to return it to Craig Brown.

This injunction is effective forthwith.

## Conclusion

The clerk of court shall enter judgment accordingly. The issue of attorneys' fees will be resolved in due course as provided in this order.

SO ORDERED.

Joseph A. DiClerico, Jr.
United States District Judge
(Sitting by designation.)

November 7, 2012

cc:  Craig Brown, pro se
     James M. Bowie, Esq.
     Frederick F. Costlow, Esq.
     Ronald W. Lupton, Esq.
     Evan J. Roth, Esq.